IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PATRICIA TEASDELL,                    *

    Plaintiff,                        *

        v.                         *       CIVIL NO.: WDQ-13-0107

BALTIMORE COUNTY BOARD                *
OF EDUCATION, *et al.*,
                                      *
    Defendants.                       *

                                      *

 *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Patricia Teasdell, *pro se*, sued the Baltimore County Board
of Education (the "Board"), William Todd, Mike Eppig, and
Michael Baker (the "individual defendants") (collectively, the
"defendants") for violations of the Americans with Disabilities
Act of 1990, as amended ("ADA")[1] and the Health Insurance
Portability and Accountability Act of 1996, as amended
("HIPAA").[2] Pending are the defendants' motion to dismiss and
Teasdell's motion to strike. For the following reasons, the
motion to strike will be denied, and the motion to dismiss will
be granted in part and denied in part.

---

[1] 42 U.S.C. § 12-101 *et seq.*

[2] Codified in scattered sections of Titles 29 and 42 U.S. Code.

I.   Background[3]

Teasdell is a Building Service Worker assigned to various
elementary schools for the Baltimore County Public Schools
System, which is operated by the Board.  ECF No. 2 ¶¶ 1-2.  Todd
is a Buildings Operation Supervisor, Eppig a Senior Operations
Supervisor, and Baker a Field Representative for the Board.  *Id.*
¶¶ 3-5.

On June 23, 2011, Teasdell "fell over a rug" while cleaning
at Millbrook Elementary School and injured her left knee.  *Id.* ¶
8.  After treatment by her primary care physician, Teasdell gave
Todd her doctor's excuse slip that said that she could not work.
*Id.*  She also told Todd that her doctor had recommended physical
therapy; the appointments "would take place in the mornings
before she was scheduled to report to work in the afternoon."
*Id.*  The defendants "expressed no problem" with this plan.  *Id.*
¶ 9.

On August 5, 2011, Teasdell met with Baker and Todd about
her lateness for work on three days[4] when she had physical

---

[3] For the motion to dismiss for failure to state a claim, the
well-pled allegations in the complaint are accepted as true.
*See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).
In reviewing the motion to dismiss, the Court may consider
allegations in the complaint, matters of public record, and
documents attached to the motion to dismiss that are integral to
the complaint and authentic.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

therapy. *Id.* ¶ 18. At the meeting, Teasdell refused to sign a letter that "unfairly portrayed her as an unreliable employee." *Id.* ¶ 19. Teasdell was thereafter "continually subjected to workplace intimidation, harassment, and scare tactics that made employment with the Defendants extremely hazardous to [Teasdell's] health and wellbeing." *Id.* ¶ 20.

On August 11, 2011, Todd took Teasdell's photograph while she was cleaning. *Id.* ¶ 21. Todd explained that he took the picture to prove that "she was capable of performing her job at full capacity." *Id.* ¶ 22. On September 16, 2011, Teasdell filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and checked the box indicating she had suffered disability discrimination at work. *Id.* ¶ 13; ECF No. 9-2. She stated on the charge form that, after her "employer was made aware of [her] medical condition," she was "asked numerous questions about [it], disciplined for being late [because of her medical] appointments, and had pictures taken of [her at work]." ECF No. 9-2. She also noted that she believed the discipline and harassment she suffered qualified as discrimination under the ADA. *See id.*

On November 11, 2011, "Baker instructed [Teasdell] to install new light bulbs in a ceiling fixture located inside a

---

[4] Teasdell was "two minutes late on the first day, sixty seconds late on the second day, and four minutes late on the third day." ECF No. 2 ¶ 19.

classroom;" this required climbing a ladder. ECF No. 2 ¶¶ 31, 32. Teasdell told Baker that she was uncomfortable changing the light bulbs because of her knee injury; Baker threatened to fire her. *Id.* ¶ 32. Teasdell climbed the ladder, changed the light bulbs, she fell while descending, and reinjured her knee. *Id.* ¶ 33.

On November 30, 2011, Todd called Teasdell at home and asked about her medical treatment and plans to return to work after the November 11, 2011 fall. *Id.* ¶ 37. Teasdell told Todd not to call her at home, and any questions about her treatment should be directed to her workers' compensation attorney. *Id.* ¶ 38.

On August 21, 2012, the EEOC issued Teasdell a right to sue letter. ECF Nos. 2 ¶ 15, 9-3. On November 15, 2012, she filed suit in the Circuit Court for Baltimore County, Maryland, alleging (1) "action for improper and illegal retaliation and conspiracy to commit retaliation," (2) violation of the ADA, and (3) violation of HIPAA. ECF No. 2. On January 9, 2013, the defendants removed. ECF No. 1.

On January 16, 2013, the defendants moved to dismiss for failure to state a claim. ECF No. 9. Their certificate of service indicated that the motion and attachments were mailed to Teasdell. *Id.* On February 5, 2013, the Clerk of the Court sent a "12/56" letter to Teasdell explaining that Teasdell had the

right to respond to the defendants' motion within seventeen days of the letter's date. ECF No. 10. Teasdell went to the Clerk's office to ask about the motion and was given a copy. ECF No. 13 at 2. On February 22, 2013, Teasdell moved to strike the defendants' motion asserting that she had not received the motion from them. ECF No. 13. She also opposed the motion to dismiss. ECF No. 13-1.

On March 11, 2013, the defendants replied to the motion to dismiss. ECF No. 15. That day, they opposed the motion to strike and submitted affidavits of their counsel Lisa Y. Settles, Esquire and her legal secretary Jane H. Matthews. ECF No. 14. Settles swore that she directed Matthews to mail the motion to dismiss and its attachments to Teasdell after they were electronically filed on January 16, 2013. ECF No. 14-2 ¶ 6. Matthews swore that she personally mailed the motion and its attachments to Teasdell on January 16, 2013. ECF No. 14-3 ¶ 3.

II. Analysis

    A.   Motion to Strike

Teasdell asks the Court to strike the defendants' motion to dismiss because they did not mail it to her. ECF No. 13. The defendants' counsel and her legal assistant swore that the motion was mailed to Teasdell. ECF Nos. 14-2 ¶ 6, 14-3 ¶ 3.

The Court has inherent authority to strike documents from the record.[5] "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Despite her allegations that the defendants failed to serve her with the motion, Teasdell had actual notice of the filing and timely responded.[6] *See* ECF No. 13 at 1-2. Because Teasdell timely responded to the motion and has not demonstrated any prejudice, Teasdell's motion to strike will be denied. *See Chambers*, 501 U.S. at 44.

B.    Motion to Dismiss

1.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of

---

[5] *See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2007); *Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10-cv-01265, 2011 WL 1584764, at *3 (S.D.W.V. Apr. 26, 2011); *Jennings v. Univ. of N.C. at Chapel Hill*, 340 F. Supp. 2d 666, 672 (M.D.N.C. 2004).

[6] Much of Teasdell's argument for striking the motion is based upon allegations of her coworker Tanya Anusie-Howard in a different case, Civil No. WDQ-12-0199, where the Court denied a similar motion to strike. In that case, Anusie-Howard alleged that Settles had admitted to a Deputy Clerk that she had "forgotten" to mail a copy of the motion; Settles and Matthews swore that the motion had been mailed. *See* Civil No. WDQ-12-199, ECF No. 22 at 10.

a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

7

An affirmative defense, such as the statute of limitations, may be raised in a motion to dismiss if clear from the face of the complaint. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).

    C.    ADA Claims

        1.    Individual Defendants

The defendants assert that there is no individual liability under the ADA, and the individual defendants should be dismissed. ECF No. 9-1 at 6. Teasdell has not responded to this argument. *See* ECF No. 13-1.

The defendants are correct that the ADA permits actions only against employers. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). Accordingly, the ADA claims against the individual defendants will be dismissed.

        2.    Retaliation Claim

The Board contends that the Court should dismiss Teasdell's illegal retaliation claim, because she "failed to exhaust her administrative remedies." ECF No. 9-1 at 6. The Board notes that Teasdell failed "to check the 'retaliation' box in her EEOC Charge" and did not "mention retaliation anywhere in her Charge." *Id*. at 7. In response, Teasdell argues that the law does not require "strict form adherence" in the EEOC charge, and that the "language and tone" of her narrative in the charge form

"clearly indicate[d] that she was making a retaliation claim."
ECF No. 13-1 at 8-9.

The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Accordingly, the ADA requires a plaintiff to "exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Id.* The exhaustion requirement is "an integral part" of the ADA's enforcement scheme,[7] because it serves the goals of: (1) providing notice to the employer of the employee's claims; and (2) promoting "quicker, less formal, and less expensive resolution of disputes."[8] Failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the plaintiff's claim. *See Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

To satisfy the exhaustion requirement, the plaintiff must have raised all claims in the EEOC charge that she later raises in litigation. *See id.* (*quoting Jones*, 551 F.3d at 300) ("The

---

[7] *See id.* (*quoting Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).

[8] *See id.* (*quoting Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents."). "Thus, '[o]nly those discrimination claims stated in the initial charge [filed with a federal or local human relations commission], those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained' in a subsequent lawsuit." *See Snead*, 815 F. Supp. 2d at 894 (*quoting Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).

Mere failure to check the "retaliation" box on the charge form is not fatal to exhaustion of this claim.[9] If the appropriate box is not checked, however, the narrative of the charge must either: (1) specifically allege or describe retaliation; or (2) show that retaliation was a "kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *See Johnson v. Portfolio Recovery Associates, LLC*, 682 F. Supp. 2d 560, 571, 573 (E.D.

_____

[9] *See Williams v. Mancom, Inc.*, 323 F. Supp. 2d 693, 695 n.2 (E.D. Va. 2004) ("EEOC complaints filed by individuals acting without the assistance of an attorney are not so strictly construed that a failure to check the 'Retaliation' box on the EEOC charge form is necessarily fatal to the later assertion of a retaliation claim."); *cf. Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs.").

Va. 2009) (*quoting Jones,* 551 F.3d at 302).[10] That the claim

alleged in the charge and the retaliation claim arise from the

same facts[11] or from the same animus[12] is not sufficient to

exhaust the retaliation claim. If the plaintiff fails to

---

[10] *See also Michaels v. Cont'l Realty Corp.,* 2011 U.S. Dist. LEXIS 109172, at *17-*18 (D. Md. Sept. 26, 2011) ("Without explicitly mentioning a retaliation claim in his EEOC Charge, merely describing the events that led to his termination is insufficient to have triggered a Commission investigation."); *Davenport v. Wal-Mart Stores E., L.P.,* CIV.A. 3:08CV119, 2008 WL 1984259, at *5 (E.D. Va. May 6, 2008); *Donald v. BWX Technologies, Inc.,* CIV. 6:09CV00028, 2009 WL 2170170, at *3 (W.D. Va. July 21, 2009) (the EEOC could not "have reasonably been expected to investigate a retaliation claim" when plaintiff did not allege in her EEOC charge that she had complained to her employer about harassment); *but see Williams,* 323 F. Supp. 2d at 695 ("it is reasonable to expect that an investigation into [plaintiff's racial discrimination claim] might uncover evidence of the related illegal motive of retaliation based on plaintiff's complaints of discrimination [to her employer]," even though EEOC charge did not allege that she had complained to her employer).

[11] *See, e.g., Black v. Mission Hosp., Inc.,* 1:11CV146, 2012 WL 112234, at *3 (W.D.N.C. Jan. 12, 2012) (dismissing retaliation claim, because plaintiff only referred to discrimination in her charge form, even though the plaintiff alleged the same facts in support of both claims); *see also Shepheard v. City of New York,* 577 F. Supp. 2d 669, 680 (S.D.N.Y. 2008) *aff'd sub nom. Shepheard v. New York City Corr. Dep't,* 360 F. App'x 249 (2d Cir. 2010) ("Where the EEOC charge alleges discrimination but not retaliation, the reasonable scope of the agency's investigation cannot be expected to encompass allegations of retaliatory motive.") (internal quotation marks omitted).

[12] *Steward v. Gwaltney of Smithfield, Ltd.,* 954 F. Supp. 1118, 1122-23 (E.D. Va. 1996) *aff'd,* 103 F.3d 120 (4th Cir. 1996) ("While [plaintiff]'s retaliation discrimination claim is similar to his race discrimination claim in their animus, the fact that [plaintiff] listed race discrimination on the EEOC charge would not lead the EEOC to investigate retaliation discrimination by [defendant].").

provide sufficient notice of her claim to the employer and the EEOC in the charge form, the plaintiff's claim is subject to dismissal.[13]

Here, Teasdell did not mark the box for "retaliation" discrimination on her EEOC charge form, only the box for "disability" discrimination, and her charge narrative does not mention retaliation. ECF No. 9-2. Although she contends that the defendants took several actions that she "view[s] as harassment," *id.*, she does not allege that the defendants' conduct was in retaliation for, *e.g.*, her complaints about their harassment. *See id.*; *Davenport*, 2008 WL 1984259, at *5. Thus, because Teasdell's EEOC charge did not exhaust her retaliation claim, the Court will dismiss this claim for lack of subject matter jurisdiction.

3. Hostile Work Environment Claim

To state a hostile work environment claim under the ADA, a plaintiff must allege: "(1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual

---

[13] *See, e.g.*, *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (dismissing plaintiff's retaliation claim when EEOC charge only alleged that she had been terminated on the basis of her age); *Steward*, 954 F. Supp. at 1122-23.

basis exists to impute liability for the harassment to the
employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th
Cir. 2001). The Board asserts that Teasdell has failed to state
an ADA hostile work environment claim, because she "has failed
to allege facts that would lead a reasonable person to conclude
that she was subjected to 'sufficiently severe or pervasive'
harassment." ECF No. 9-1 at 8. The Board contends that
Teasdell "only alleged at most three incidents" of harassment,
and these incidents "do not *remotely* approach the severity or
pervasiveness" of harassment that other successful ADA
plaintiffs have encountered. *See id.* at 9-10. Teasdell asserts
that the facts alleged in her complaint -- particularly her fall
from the ladder -- are severe or pervasive harassment. *See* ECF
No. 13-1 at 7 ¶¶ 31-34.

To recover, the plaintiff must show that she "subjectively
perceived [her] workplace environment as hostile," and "a
reasonable person would [perceive] it [as] objectively hostile."
*Fox*, 247 F.3d at 179. The complaint alleges that Teasdell
subjectively experienced "harass[ment] and intimidat[ion]" at
work. ECF No. 2 at 5 ¶ 30.

To determine whether Teasdell's workplace was "objectively
hostile," the following factors are relevant: "(1) the frequency
of the discriminatory conduct; (2) its severity; (3) whether it
is physically threatening or humiliating, or a mere offensive

13

utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Fleetwood v. Harford Sys. Inc.*, 380 F. Supp. 2d 688, 704 (D. Md. 2005) (*citing Fox*, 247 F.3d at 178). "The degree of hostility or abuse . . . [is] determined by examining the totality of the circumstances." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

There is no formula for determining the amount of discriminatory conduct necessary to establish severe or pervasive harassment. *See Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 778 (D. Md. 2010) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)) (a plaintiff may state a claim when harassment did not occur on a daily, or even weekly basis). Isolated incidents or personnel actions are generally insufficient to satisfy this element, particularly when they "lack a linkage" to the disability. *See Rudolph v. Buncombe Cnty. Gov't*, 846 F. Supp. 2d 461, 475-76 (W.D.N.C. 2012) *aff'd*, 474 F. App'x 931 (4th Cir. 2012) (internal quotation marks and citations omitted).[14] However, if a single incident of harassment is severe enough, the plaintiff may have

_____

[14] *See also Adams v. High Purity Sys. Inc.*, 1:09CV354 (GBL), 2009 WL 2391939, at *4 (E.D. Va. July 2, 2009) *aff'd*, 382 F. App'x 269 (4th Cir. 2010) (an isolated threat to pay plaintiff's "white-ass back" did not alone create a hostile working environment); *Rock v. McHugh*, 819 F. Supp. 2d 456, 471-72 (D. Md. 2011) ("Discrete and isolated personnel decisions" do not create a hostile work environment, particularly when plaintiff's supervisors did not "threaten[] or humiliate[] him.").

stated a claim even if the harassment is not necessarily "pervasive."[15] The severity of the defendants' actions must make the plaintiff's work environment more than "merely unpleasant." *See Tawwaab*, 729 F. Supp. 2d at 776 (*quoting Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996)).

Teasdell contends that three incidents of harassment over a period of roughly five months created a hostile working environment. *See* ECF No. 2 at 2, 5 ¶¶ 8, 31. First, she contends that she was inappropriately disciplined for her late arrival at work, because her supervisors knew that she was coming from physical therapy appointments on those days. *Id.* at 2-3 ¶¶ 10-12. Because Teasdell knew that supervisors were told to discipline late employees regardless of the reason for their lateness, there is no apparent "linkage" to Teasdell's disability. *See Rudolph*, 846 F. Supp. 2d at 475-76; ECF No. 13-1 at 5. Teasdell only alleges that she was disciplined for being late, not because of her disability; this does not indicate a hostile work environment claim. *See Rock*, 819 F. Supp. 2d at 471-72.

---

[15] *See Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 669 n.15 (D. Md. 2008) ("The behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is."); *Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434, 437-38 (D. Md. 2002) (a single incident of harassment was sufficiently severe, when plaintiff was forced by management to reveal "unusually intimate and personal" details about her life to co-workers).

Second, Teasdell contends that Todd took a picture of her without her permission to prove that she was not disabled and then "proceed[ed] to stalk [her] as she attempted to continue her cleaning duties." ECF No. 2 at 3 ¶ 22. She also alleges that Baker threatened to fire her if she did not climb a ladder, even after she said that doing so would aggravate her knee injury. *Id.* at 5 ¶¶ 31-33. Viewed objectively, a reasonable person could conclude that the defendants engaged in severely humiliating actions that directly related to Teasdell's disability. Climbing the ladder made Teasdell's work environment more than "merely unpleasant;" Baker knew that forcing Teasdell to climb the ladder could injure her, and falling from the ladder did aggravate Teasdell's knee injury. *Id.* at 5 ¶¶ 31-33; *Fox*, 247 F.3d at 179 (affirming a finding of severe or pervasive harassment, in part, because plaintiff's "supervisors' harassment exposed him to some physical harm"). Management's involvement in these incidents, *see Rohan*, 192 F. Supp. 2d at 438, and Teasdell's "fear" that she would lose her job if she did not climb the ladder despite her belief that it would harm her, *see* ECF No. 2 at 5, combine to make this severe harassment. Thus, although Teasdell alleges only a few incidents of harassment, viewed together they are sufficiently severe to state a hostile work environment claim.

4. Punitive Damages

The Board argues that Teasdell's claim for punitive damages must be dismissed, because punitive damages are unavailable in an ADA suit against a government entity. ECF No. 9-1 at 10. Although punitive damages are generally available in suits brought under the ADA,[16] the statute specifically exempts "government[s], government agenc[ies] [and] political subdivision[s]." See 42 U.S.C. § 1981a(b)(1).[17] The Board is a state government agency as a matter of Maryland law.[18] See Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert, 409 Md. 200, 205 (2009). Thus, Teasdell's claim for punitive damages against the Board will be dismissed.

---

[16] Section 1981a provides that a "complaining party" may recover "compensatory and punitive damages" in actions brought under Title VII, 42 U.S.C. § 2000e-5. See U.S.C. 1981a(a)(1). ADA actions incorporate the enforcement procedures of § 2000e-5. Sydnor, 681 F.3d at 593; Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999) ("The remedies available under Title VII [are] applicable to actions under the ADA.").

[17] See also Fields v. Trollinger, 1:10CV296, 2011 WL 3422689, at *13 (W.D.N.C. Mar. 28, 2011) report and recommendation adopted, 1:10CV296, 2011 WL 3421489 (W.D.N.C. Aug. 4, 2011); McInnis v. N. Carolina Dep't of Env't & Natural Res., 223 F. Supp. 2d 758, 763 (M.D.N.C. 2002).

[18] Cf. Fields, 2011 WL 3422689, at *13 (relying on North Carolina law to determine that the defendant Board of Education qualified as a government entity).

D.    HIPAA CLAIM

The defendants assert that Teasdell's HIPAA claim must be dismissed because there is no private right of action under the statute.  ECF No. 9-1 at 14.  Teasdell has not responded to this argument.  *See* ECF No. 13-1.

The defendants are correct that there is no private right of action under HIPAA.  *See Atkinson-Bush v. Balt. Wash. Med. Ctr.*, Civ. No. L-10-2350, 2011 WL 2216669, at \*3 (D. Md. May 25, 2011).  Accordingly, Teasdell's HIPAA claim will be dismissed.

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be denied as to plaintiff's hostile work environment claim against the Board.  The remainder of the defendants' motion to dismiss will be granted.

_9/6/13_
Date

William D. Quarles, Jr.
United States District Judge

18